GALVESTON, HARRISBURG & SAN ANTONIO RAILWAY COMPANY v. GIRARD E. LOBIT.

Decided November 9, 1910.

Railroads—Collision of Trains—Personal Injuries—Engineer—Contributory Negligence—Question of Fact.

In an action by a locomotive engineer against railroad company for damages for personal injuries caused by a collision of trains through a change in

running orders without notice to the engineer, evidence considered and held to raise a question of fact whether the plaintiff, engineer in charge of one of the trains, was guilty of contributory negligence in leaving a siding and starting on his run, and sufficient to support a finding that he was not guilty of negligence in so doing.

Appeal from the Sixty-first Judicial District, Harris County. Tried below before Hon. Norman G. Kittrell.

*Baker, Botts, Parker & Garwood, Lane, Wolters & Storey* and *Wm. A. Vinson,* for appellant.—The undisputed evidence in the case having shown that the plaintiff's injuries were caused by his own negligence in violating the rules and orders promulgated by the defendant for the running of his train, and, further, that after so violating said rules and orders, and going out on the main line and discovering the train approaching him which collided with his train and inflicted the injuries of which he complains, he negligently failed to stop his train and avoid said collision and injuries, which he could have done; and that but for such negligence and failure on his part, said collision would not have occurred, and the plaintiff would not have been injured, it was the duty of the court to instruct the jury to return a verdict for the defendant. International & G. N. Ry. Co. v. Rieden, 107 S. W., 665; Galveston, H. & S. A. Ry. Co. v. Brown, 63 S. W., 305; Galveston, H. & S. A. Ry. Co. v. Brown, 59 S. W., 930 (dissenting opinion); Fritz v. M. K. & T. Ry. Co., 30 S. W., 88; Texas & N. O. R. R. Co. v. Stewart, 71 S. W., 330; Smith v. A. T. & S. F. Ry. Co., 87 S. W., 1052; International & G. N. Ry. Co. v. Brice, 97 S. W., 461; Gulf, W. T. & Pac. Ry. Co. v. Ryan, 69 Texas, 669; Southern Pac. v. Ryan, 29 S. W., 527.

*Lovejoy & Parker,* for appellee.—Whether appellee was guilty of contributory negligence in going ahead on his run after the two trains had passed, or whether he was guilty of contributory negligence in not realizing that the train with which his train collided was approaching him in time to avoid collision therewith, were clearly questions of fact for the determination of the jury under the evidence before them. Texas & P. Ry. v. Murphy, 46 Texas, 366 et seq.; Lee v. Ry., 89 Texas, 588.

JAMES, Chief Justice.—This action was to recover for personal injury sustained by Lobit, a locomotive engineer of appellant, by a collision of his train with another train of appellant, which took place on the main track between the stations of Deepwater and Strang. There was a verdict for plaintiff for $15,000.

As no question arises upon the pleadings, we shall state the substance of the testimony. Plaintiff was operating passenger train No. 175 from Houston to Galveston. Train No. 176 was being run from Galveston towards Houston in three sections. Plaintiff's train was due to leave Houston at 7:15 p. m., but did not move out until 7:45. Before leaving, the orders delivered him and the conductor were as follows:

"Order No. 26.  3/176.  Engine 270 will wait at Galveston until 10.05 p. m. for No. 175, engine unknown."

"Order No. 27.  First and second No. 176, eng. 258 and 456 will wait at Strang until 8:10 p. m. for No. 175, eng. unknown."

There was no disagreement among the witnesses as to the meaning of these orders. Under order 27 appellee's train, No. 175, had the right of track as far as Strang, if he could make that point by 8:10. After that hour, the first and second sections of No. 176 would have the right of track out of Strang, and appellee's train had the right of track over the third section until 10:05, when the third section was due to leave Galveston. It is also undisputed that appellee was not able to reach Strang by 8:10, about which time he arrived at Deepwater, about 8 miles north of Strang, and at Deepwater appellee took the side track, for the purpose of letting sections 1 and 2 of No. 176 pass, as it was his duty to do.

In a few minutes (about 8:16) a train passed, consisting of a freight engine drawing a caboose, at a speed shown by testimony to be about 60 miles an hour and too fast for the number of the engine to be discerned. In the cupola of this passing train were the figures 1/176, in large characters, by which was meant that it was the first section of No. 176. It also carried the signals indicating that another section was following. Appellee saw said figures and concluded it was the first section referred to in his orders.

Shortly afterwards another train, a passenger train, came by, and appellee concluding that this was the last section referred to in his orders proceeded with his train on the main line in the direction of Strang at a rapid rate, but a rate within the rules, and before reaching there collided with another section of No. 176. This last named train which passed him at Deepwater also had signals indicating that there was a following section, which could have had reference to the third section that was to leave Galveston at 10:05.

It appears from the testimony that after the orders aforesaid were delivered to appellee, a change was made at Strang, under directions from the dispatcher, in reference to train No. 176, by introducing the engine and caboose and running it out from there as section No. 1, thereby in fact creating three sections of train No. 176 in addition to the section at Galveston, and thereby placing appellee in danger unless he remained on the side track until three sections had passed him. The second train that passed him was really the first, and the train he collided with was really the second section of No. 176 as originally referred to in his orders.

It was testified to by appellee that his orders were to meet engine 258 first, and that he expected to meet a passenger train first, and that he did not meet a passenger train first, as he expected, and that he recognized engine 258 by its whistle, which was the second train that passed, and he knew the whistle of 258 and knew that the engine on the first train was not 258. He, therefore, knew all this before he left the

side track. It was testified to that the engine and caboose was a train within the meaning of the orders. An engineer testified: "It might have been the company's desire to run that perishable train, or something else, the first section, which they frequently do. I have been on lots of them. They run stock trains as first section to passenger trains where they have fast time. The company has the right to put it ahead or behind, whichever they desire." It was undisputed that appellee did not stop the second train to assure himself concerning the situation, nor did he take any steps toward ascertaining the situation from the operator at Deepwater, nor at Deer Park, which he passed a little further on. He concluded that the condition of his orders had been met, by the passage of the two trains, and proceeded in the belief that the track was clear to Strang. The witness Collins, telegraph operator at Strang, testified that the dispatcher issued an order to make the caboose and engine a section of No. 176, and he had to obey him. "It did not occur to me to have first No. 176 notify train No. 175 that this change had been made in the orders; it wasn't necessary for me to tell them. I knew there was no way of telegraphing to that southbound passenger train, the dispatcher knew no way of getting word to him. There was no night office at Deepwater or Deer Park. The dispatcher did not tell me to notify this crew to tell the southbound passenger crew—the engineer and conductor—that this change had been made."

It appears that the conductor of the train which collided with appellee's, objected at Strang to being sent out as section No. 3 instead of 2, and Collins testified: "I went and talked over the wire to the dispatcher at Houston and he told me to tell the conductor of the third section to go on out, that he had his orders." It is evident that said conductor, who had the same orders as appellee, had misgivings about sending out a third section at that time.

There was ample testimony by witnesses, that appellee's course in leaving the side track was regular, proper and the act of a prudent person under the orders he had and the circumstances surrounding him at the time.

Defendant's rule No. 106 from its book of rules reads: "In all cases of doubt or uncertainty the safe course must be taken, and no risks run."

Rule 206 for the government of trains by train orders: "Regular trains must be designated in train orders by their numbers, as No. 10 engine 1438, or second No. 10 engine 1454, adding the engine number in each instance. Extra trains by engine numbers, as Extra 798, with the directions, as east and west. Other numbers and trains will be stated in Fig. 1."

These rules were in evidence and we set them forth, they being the basis of appellant's contention that the number of the engine being made an essential part of the order in the identification of trains, appellee was bound, in the exercise of due care, to have known the numbers of the passing engines and that the numbers called for in his orders had passed

him, before he proceeded. The engine No. 456 had not passed but was the one he ran into.

Defendant's superintendent, among other things, testified: "He knew (speaking of the dispatcher) as my substitute that he would have the right at any time to substitute a freight train, or any other train, for section 1, if he wanted to. He has a perfect right to do that. He did substitute an engine and caboose for one section of train 176. I do not pretend to say that the dispatcher did not neglect his duty. He didn't do his duty, nor neither did the crew on the other train." This evidently has reference to his failure to have precautions taken to notify appellee of the change, which could have been done by means of the passing trains. The same witness testified: "It is a fact that it frequently or sometimes occurs that an engine, where you have given the number in the orders, that is going to pull the train, it does occur that the engine for some reason is disabled and some other engine pulls the train—that does occur."

The first assignment of error is that the court erred in refusing a peremptory instruction for defendant, because according to the undisputed evidence and under the law applicable thereto, plaintiff was not entitled to recover.

The second is that the court erred in refusing a new trial because the verdict is against the great weight of the evidence since the testimony shows beyond question that appellee was guilty of contributory negligence, and could by the use of ordinary care have avoided the collision and the injury to himself, the evidence showing that long before he jumped from his engine, he saw the other engine approaching and made no effort to stop his engine and avoid a collision.

Also because the verdict is against the great weight of the evidence in this: that all the testimony shows that plaintiff was guilty of contributory negligence in this: that he went out on the main line in plain and open violation of his orders, in that he had an order to meet engine 258 first and 456 next, both engines drawing passenger trains, and that not being able to make Strang, the meeting point, as was his duty he took siding at Deepwater where the first engine called for in his orders, No. 258, passed him, another engine drawing a caboose having passed ahead of engine No. 258 at Deepwater, whereupon plaintiff, without making inquiry, as was his duty, went with his engine upon the main line at that point which was about 8 miles from Strang, and ran at the rate of about fifty-five or sixty miles an hour, against his orders; met engine No. 456 and collided with same as it stood upon the track, the headlight facing him about one and a half miles from Strang, and to avoid the collision jumped from his engine; that he saw the engine's headlight approaching him five miles away, in ample time to have stopped his engine and train, but without exercising ordinary care, or any sort of care, he ran on to a collision therewith.

*Opinion.*—In so far as concerns the question of appellee's contributory negligence in going at too great a speed or in not checking or stop-

ping his train in time to avert the collision, we find as a conclusion of fact, from ample evidence in the record, that he was not chargeable with negligence in those respects.

The other question is whether or not he was culpable, as a matter of law, in leaving the siding and proceeding on his way at the time and under the circumstances. We are of opinion that he was not.

His orders required him to take the siding at Deepwater to await the passage of two sections of train 176. This he did. The orders in his hands identified the trains he was to wait for as the first and second sections of 176 drawn by engines 258 and 456 respectively. He had no knowledge of the change that had been made at Strang, adding another section, which was sent forward ahead of the two referred to in his orders as sec. No. 1, and which was made to prominently display itself as sec. 1 of train 176. By this proceeding defendant introduced a danger unknown to appellant. Thus three trains had to pass him before he could safely move out, instead of two as stated in his orders. But for this the collision would not have happened.

Nevertheless, if, as appellant contends, appellee in leaving the siding when he did disobeyed the plain terms of his orders, we take it that it would have been unnecessary for defendant to have given him other or special notice of the change mentioned, as defendant doubtless had the right to rely on his following the orders which he had. The question is: Did he violate his orders?

The following represents the situation as we understand it. He had orders to wait there for the first and second sections of 176. As he had been expected to meet those sections at Strang, he knew when he took the siding at Deepwater that they were immediately due to pass there. In a few minutes after stopping on the siding one passed, the engine number not distinguishable, but which showed from the cupola to be section 1 of 176, which it really was, having been made so at Strang, although not the section 1 as originally intended in appellee's orders. He knew, however, that this train did not have the engine number which corresponded with the engine mentioned in his order for section 1, being familiar with the whistle of that engine. But he took it for section 1 called for in his order, on account of what he saw on the cupola, and waited. In ten or fifteen minutes another train came by, and he recognized on this train, by its whistle, the engine 258 which his order connected with the first section that was to pass him. He then concluded that the two sections mentioned in his order had passed and proceeded out upon the main track.

There was testimony by experienced witnesses going to show that engineers would have understood the situation as appellee did in view of his orders and the circumstances, and would have gone forward on the main track just as he did.

There can be no doubt from the testimony, that the circumstance that the first section that passed did not have on it the engine mentioned in the orders in connection with it, and the circumstance that the second

section did have that particular engine, and that this fact was known to appellee before he moved out, was suggestive of some confusion or that something was wrong with, or that some change had taken place in, the arrangement of the sections of No. 176; or on the other hand that there was something wrong with appellee's orders as to the engines. Two sections had passed, appellee had been on the alert, the first displayed itself as section 1, 176, which answered his orders that far. It is true he might have stopped that train and examined the engine number, and he probably would have been required to do so if his order had so provided. But as it did not, appellant is certainly mistaken in contending that he violated a positive order in not going that far to satisfy himself that section No. 1 as described in his orders had or had not passed. There being no order which required him to know the engine numbers that passed him and to be governed by that fact, his failure to stop the passing trains and ascertain the numbers when they were not discernible, and his acting upon what the train announced itself to be, would involve no more than a question of ordinary care on his part.

He considered that the first section referred to in his orders had passed. Another section passed and he knew this had the engine which did not belong to section 2 but to section 1, according to his orders. These, as already stated, were circumstances which suggested that there was something wrong about the arrangement of the sections of 176, or something wrong about the orders. But what did they suggest? Nothing definitely. They certainly did not advise him that another section had been added at Strang, and that new conditions, not embraced or contemplated in his orders, viz: the passing of three sections at Deepwater instead of two before he could safely go out, had been created. He had the right to assume that no change involving a new danger to him would be created, and was not required to anticipate that defendant would introduce a new danger without providing for notice to him. Although he knew that the first section that passed did not have engine 258, and although he knew that the second section had engine 258 which according to his orders should have been on section 1, and from this he may have known that some change had been made in the sections of 176, still he had the right to act upon the belief that these things involved no new risk or danger to him. They did not necessarily indicate danger, nor the fact that three sections had been made, and there being nothing to notify him of the existence of such conditions except what might be inferred from said circumstances, it presented, at the utmost, nothing more than a question of fact for the jury whether or not from said circumstances a reasonably prudent person in his situation would have realized the danger involved in the moving out of the train, and taken the precaution to ascertain what, if anything, they meant.

For these reasons we conclude that there was no error in refusing the peremptory instruction, or in the overruling of the motion for new trial. The rule: "In all cases of doubt, or uncertainty, the safe course must be taken, and no risks run," does not affect the view above expressed.

The fourth and fifth assignments complain, first, of the refusal of a charge which would have told the jury that if it was plaintiff's duty to wait at Deepwater until engines 258 and 456 with their trains had passed, and he did not do so, to find for defendant. This, from what has been said, was correctly refused. The second complaint is of the refusal of a charge which embodied like error. There was no rule, nor order, which required appellee to know the number of the passing engines, and it would have been error for the court to make such failure negligence as a matter of law.

The remaining assignment is that the verdict is excessive. The testimony concerning his injuries, in our opinion, does not indicate an excessive finding. Judgment affirmed.

*Affirmed.*

Writ of error refused.